JACOB BAER V. STATE OF NEBRASKA.

FILED FEBRUARY 9, 1900.   No. 11,097.

1. **Reception of Evidence:** JUDICIAL DISCRETION.   The reception of
   evidence out of its regular order is not reversible error, unless
   it amounts to an abuse of judicial discretion.

2. **Assignment of Errors.**   Errors which have not been specifically
   assigned will not be considered.

3. **Evidence.**   Evidence examined, and *held* sufficient to sustain the
   verdict.

ERROR from the district court of Kearney county.
Tried below before BEALL, J.   *Affirmed.*

Baer v. State.

*Ed L. Adams* and *Hamer & Hamer,* for plaintiff in error:

The evidence did not warrant a conviction of rape. The state failed to prove that the prosecutrix was not the daughter or sister of the defendant. This was fatal. See Bishop, Criminal Procedure, secs. 77, 81, 84, 86; Maxwell, Criminal Procedure, pp. 621, 629.

*Ed L. Adams* argued that Meddles' name was indorsed on the information as one of the state's witnesses. After the state had rested and after the defense had rested, this man, over the objection of defendant, was permitted to testify as shown in the transcript. Counsel had never known of so flagrant a violation of the rules governing the admission of testimony. This was not rebuttal testimony. The state must first make its case, and the defendant was entitled to know all that the state would produce against him. Here was a man permitted to testify to that which should be a part of their case in chief. He was practically the last witness called. He testified to a conversation that he overheard where several parties were present. What opportunity was given to defendant for him to look up those parties and prepare to answer such statement? His case was ready to be given to the jury, and he had long before rested his case. It could not be said that it was proper as impeaching testimony.

*C. J. Smyth, W. D. Oldham* and *J. L. McPheeley,* for the state, argued that the defendant himself testified that he was forty-five years of age, and that he had only known the prosecutrix for about eleven years. "We submit to this honorable court that from this testimony it was shown conclusively to the jury that it was a physical impossibility for the prisoner to have been the father of the prosecutrix, as there was only five years difference in their ages. We also submit to the court that the fact that each of them testified that they had only known the other for about ten or eleven years is evidence tending

to show that they were not brother and sister. The fact that both parties appeared before the jury and testified in full view of the jury would be a circumstance that might have aided this other testimony in enabling the jury to reach the conclusion that the prisoner and the prosecutrix were not brother and sister: In other words, while this proof was not as conclusive as it might have been made by the state, yet, when the absence of such a relation as father and daughter, or brother and sister, was to the advantage of the prisoner, and tended to reduce the punishment of his crime, if he was guilty of the offense charged, for the court will readily see that a prosecution under section 12, where the relationship of father and daughter or brother and sister does not exist, is a less heinous and disgusting crime than a prosecution under section 11 of the Code, where such a relationship does exist. This fact alone would entitle the prisoner to the presumption of innocence of that grade of the crime until proof was tendered showing that the relationship did exist. Our theory is that the proof of want of relationship being to the advantage of the prisoner in the case, the evidence would be sufficient to sustain a finding that no relationship existed, and that there was sufficient proof to justify the jury in finding that Addie Hill was not the sister or daughter of Jacob Baer."

Sullivan, J.

The information, which was drawn under section 12 of the Criminal Code, charges the defendant, Jacob Baer, with having committed a rape upon the prosecutrix, Addie Hill. The trial resulted in a verdict for the state, and the court pronounced sentence accordingly. The alleged insufficiency of the evidence is the principal ground relied on for a reversal of the judgment.

It is claimed on behalf of the defendant that the evidence establishes an alibi, and that it fails to establish non-consent of the prosecutrix to the sexual act. Mrs.

46

Hill was a widow about forty years of age. She lived in the village of Lowell in Kearney county, and on the night in question was entirely alone. Being called as a witness, she stated that the defendant, about 2 o'clock in the morning of August 9,. 1898, gained admission to her house by falsehood and deceit. As to what then transpired she testified as follows: "Well, he took hold of me and threw me to the floor and of course I tried to fight my way as well as I could; he is a large man and he told me then what he had come for and he said I had to submit to his wishes; I told him that I would not, and he said that I had to; of course I tried to fight and we went around the floor, I can tell you, many times, but he being a large man threw his weight on my shoulders and confined me a good deal but I tried as hard as I could to fight, and I never gave up to him, Once he says, 'Now are you going to do this?' I said, 'No, sir'; he said, 'You have to,' and I said, 'I will not,' and he says, 'You have to do this or you will die right here,' and I said, 'Well, I guess you will have to kill me, I think more of my character than I do of my life,' but he tried several times to make me say that I would submit to his wishes, but I would not; I fought as bravely as I could, me being a small woman. * * * He dragged me around and I could not help myself and finally he went away; he said that he was bound to have his wishes from me whether I was willing or not, and he fought me until he gained that, then he started to go away and he said that if I told it he would kill me; he said that there were others out there secreted in the weeds and it would not do any good for me to squeal because it would not help me any, and once when I found I could not do any more I called on the Lord to save me, and he said that it would not do any good for me to talk to my God, that He would not help me, that he had me now." There was other evidence to the effect that the prosecutrix complained immediately of the outrage; that she was scratched and bruised and her clothes torn; that Baer had been at

Minden drinking intoxicants on the night of August 8, and arrived at Lowell with his team about 2 o'clock on the morning of August 9; that the tracks of buggy wheels were found all the way from Mrs. Hill's front gate to the place where defendant was stopping. Some further incriminating circumstances were given in evidence, but we deem it unnecessary to make special reference to them here. The evidence adduced by the state was not directly controverted, except by the testimony of the defendant, who stated that when he arrived at Lowell on the morning of August 9 he went immediately to the home of his father-in-law and did not call upon Mrs. Hill. That the jury were justified in finding that the defendant had sexual relations with the prosecutrix at the time alleged in the information is a matter about which there is in our minds no disquieting doubt. Neither do we see in the evidence any reason to suppose that the woman at any time submitted voluntarily. The proof on this point is all to the contrary and tends, irresistibly, to show that Baer accomplished his criminal purpose by intimidation and superior force. Notwithstanding the attempt to show that he was a cripple and affected with numerous wasting maladies, there is, we think, abundant reason for believing that he was a man of unusual strength and activity, and that his powers were entirely adequate to the execution of the design imputed to him. It is said that some of the arguments employed by the prosecutrix to induce her assailant to abandon his project indicate on her part an attitude of non-resistance. The particular language to which attention is directed affords no such inference. When it became evident that further physical resistance would be unavailing, Mrs. Hill made an appeal for mercy, in which she reminded the defendant of the virtues and worth of his own wife, who would be dishonored by his transgression. This appeal was a futile one and possibly, as counsel contend, was not in the least calculated to dissuade; but that fact, if it be conceded, does not justify the inference that the resistance

was formal or the entreaty insincere. The jury having found that the accused was at the house of the complaining witness on the morning of August 9, they could not, without disregarding the evidence, have found that no crime had been committed.

But it is contended that the proof does not show that Baer and Mrs. Hill are not brother and sister, and that, therefore, the crime committed may have been more heinous and revolting than the one charged. In this connection it has been suggested by the attorney general that if one of two crimes was committed, the law presumes the commission of the one to which is attached the lighter penalty and which involves the lesser degree of turpitude. It will not be necessary to determine whether the presumption of innocence may be employed in any case to establish guilt; for, in our opinion, the evidence adduced upon the point in question is, in the absence of opposing proof, sufficient to sustain the finding of the jury. The accuser and the accused were witnesses at the trial, and, according to the testimony of both, while they had lived for several years in Kearney county and knew each other, they were only slightly acquainted. While testifying, each spoke of the other as though they were not related in any degree. The conversation which took place between them when they met at the door of Mrs. Hill's cottage on the night of the outrage was, also, a circumstance tending to show that they were not brother and sister. And these were not necessarily the only matters of which the jury took cognizance in reaching their conclusion. They may have noted an entire want of family resemblance between the parties. Indeed, it may have been apparent upon the most casual observation that they were not of the same nationality, race or color.* We do not, however, at this time decide that mere family resemblance, or the absence of it, is a relevant fact in a case of this kind. What we do decide, and all we decide in this behalf, is that there is no techni-

*See *White v. State*, 74 Ala., 31.—Reporter.

cal defect in the state's proof and that the verdict rests upon sufficient competent evidence.

Another question of minor importance remains yet to be considered. The fifth and sixth assignments of error call in question the action of the court in permitting Frank Meddles to testify on rebuttal to the fact that the defendant declared in Minden on the evening of August 8 that he intended to satisfy his sexual passion before going home that night. This testimony was not properly rebuttal; but the order in which proof shall be introduced is a matter resting largely in the sound discretion of the trial court, and we discover no reason to believe that there was, in this instance, an abuse of discretion. In *Basye v. State*, 45 Nebr., 261, it was decided that "the order in which a party shall introduce his proof is, to a great extent, discretionary with the trial judge, and the action of the court in that regard will not be cause for reversal when no abuse of discretion is shown." This rule has been followed in *Davis v. State*, 51 Nebr., 301, and *Whitney v. State*, 53 Nebr., 287. See, also, *Rheinhart v. State*, 14 Kan., 318; *Blake v. Powell*, 26 Kan., 320; 1 Thompson, Trials, sec. 344; 8 Ency. Pl. & Pr., 132.

Other alleged errors argued in the brief of counsel for defendant have not been specifically assigned, and will not be considered. The judgment is

AFFIRMED.